UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

J.S.,

                        Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

                        Defendant.
_____

**REPORT AND RECOMMENDATION**

20-CV-00297(JLS)(JJM)

"The Individuals with Disabilities Education Act (IDEA or Act) provides that a court 'may award reasonable attorneys' fees as part of the costs' to parents who prevail in an action brought under the Act. 111 Stat. 92, 20 U.S.C. §1415(i)(3)(B)." Arlington Central School District Board of Education v. Murphy, 548 U.S. 291, 293 (2006). Relying upon §1415(i)(3)(B), plaintiff J.S. seeks in this action to recover from defendant New York State Department of Corrections and Community Supervision ("DOCCS") the attorneys' fees and costs which he allegedly incurred in an administrative proceeding which determined that he was entitled to compensatory special educational services under the IDEA. Complaint [1].[1]

Before the court is DOCCS' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [7], which has been referred to me by District Judge John L. Sinatra, Jr.

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

for initial consideration [8]. Having reviewed the parties' submissions [7, 12, 13], I recommend that the motion to dismiss be granted.[2]

## BACKGROUND

In August 2016, J.S., who was then 20 years old, commenced an administrative proceeding against DOCCS, alleging that it violated the IDEA by denying him an appropriate public education during his incarceration. Complaint [1], ¶¶2, 3, 12. He was represented in the administrative proceeding by Disability Rights New York ("DRNY") and Prisoner's Legal Services of New York ("PLS"). Id., ¶5. In March 2017, hearing officer Paul T. Bumbalo concluded that DOCCS had violated the IDEA, and that J.S. was entitled to compensatory special educational services. Id., ¶¶27-28; [1-1]. J.S. allegedly incurred $71,542.00 in attorneys' fees and $988.72 in costs in connection with that proceeding, which he now seeks to recover pursuant to 20 U.S.C. §1415(i)(3)(B)(i)(I). Id., ¶34.

## DISCUSSION

20 U.S.C. §1415(i)(3)(B)(i)(I) provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability". While conceding that J.S. was a "prevailing party" in the administrative proceeding, DOCCS argues that he is not entitled to the relief which he seeks, "as he is not the parent of a child with disability". DOCCS' Memorandum of Law [7-1], p. 2. In opposing DOCCS' motion, J.S. argues

---

[2] While DOCCS also requests a stay of its deadline for answering the Complaint, no stay is necessary, since the motion to dismiss automatically stays its deadline until 14 days after the court decides the motion. See Rule 12(a)(4)(A).

that "no court in this or any other jurisdiction has denied the benefit of IDEA's fee-shifting provision attorney fees in an action brought by a student rather than a parent". J.S.'s Memorandum of Law [12], p. 9. Be that as it may, he points to no controlling - or even persuasive - legal authority for granting that relief.

      Where (as here) a remedy is created by statute, the court "must look necessarily to the statute . . . to determine who may recover". Middleton v. Luckenbach S.S. Co., 70 F.2d 326, 329 (2d Cir. 1934). In this case, the statute allows recovery only by "a prevailing party who is the parent of a child with a disability", and "under traditional principles of statutory interpretation, Congress' explicit listing of who *may* sue . . . should be understood as an *exclusion of others* from suing". Silvers v. Sony Pictures Entertainment, Inc., 402 F.3d 881, 885 (9th Cir. 2005) (emphasis in original). *See* Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) ("the statute authorizes an award of compensation to one of three types of persons: trustees, examiners, and §327 professional persons. A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation"); National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458 (1974) ("when legislation expressly provides a particular remedy . . . courts should not expand the coverage of the statute to subsume other remedies"). Therefore, as the Second Circuit has recognized, "[t]he attorneys' fees provision of the IDEA provides that the parents, *not the child*, will receive or pay attorneys' fees". L.A. v. Granby Board of Education, 227 Fed. App'x 47, 50 (2d Cir. 2007) (Summary Order) (emphasis added).

      J.S. argues that "the legislative history of the IDEA plainly permits a student to recover". J.S.'s Memorandum of Law [12], p. 11. However, because "legislative history can never defeat unambiguous statutory text", Bostock v. Clayton County, Georgia, __ U.S. __, 140

S. Ct. 1731, 1750 (2020), "reference to legislative history is inappropriate when the text of the statute is unambiguous". Department of Housing and Urban Development v. Rucker, 535 U.S. 125, 132 (2002).

For example, in Arlington Central School District, the Court was called upon to decide whether the IDEA allowed prevailing parents to be compensated for expert witness fees.refused to consider legislative history in deciding whether Congress intended to authorize compensation for expert witness fees to prevailing parents. The Court noted that its "resolution of the question presented in this case is guided by the fact that Congress enacted the IDEA pursuant to the Spending Clause. U.S. Const., Art. I, § 8, cl. 1 . . . . [T]he IDEA provides federal funds to assist state and local agencies in educating children with disabilities and conditions such funding upon a State's compliance with extensive goals and procedures." 548 U.S. at 295.

The Court reasoned that "when Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out unambiguously . . . . Thus, in the present case, we must view the IDEA from the perspective of a state official who is engaged in the process of deciding whether the State should accept IDEA funds and the obligations that go with those funds. We must ask whether such a state official would clearly understand that one of the obligations of the Act is the obligation to compensate prevailing parents for expert fees. In other words, we must ask whether the IDEA furnishes clear notice regarding the liability at issue in this case." Id., p. 296.

In refusing to consider legislative history, the Court held that "[i]n a Spending Clause case, the key is not what a majority of the Members of both Houses intend but what the States are clearly told regarding the conditions that go along with the acceptance of those funds. Here, in the face of the unambiguous text of the IDEA . . . we cannot say that the legislative

history on which respondents rely is sufficient to provide the requisite fair notice" to the states that they could be liable for payment of expert witness fees to prevailing parents. Id., p. 304.

Arlington Central School District's rationale applies with equal (if not greater) force in this case: just as the text of the statute did not provide fair notice to the state that it could be liable for payment of expert witness fees, it likewise does not provide fair notice that the state could be liable to reimburse attorney's fees and costs to anyone other than "the parent of a child with a disability".

J.S. next argues that allowing him to "independently bring an IDEA action and receive an award of attorneys' fees, is consistent with sound public policy". J.S.'s Memorandum of Law [12], p. 12. However, "policy arguments cannot supersede the clear statutory text". Universal Health Services, Inc. v. United States, ___U.S.___,136 S. Ct. 1989, 2002 (2016). *See also* Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania, ___U.S.___,140 S. Ct. 2367, 2381 (2020) ("a policy concern cannot justify supplanting the text's plain meaning"); Henry Schein, Inc. v. Archer & White Sales, Inc., ___U.S.___, 139 S. Ct. 524, 531 (2019) ("we may not rewrite the statute simply to accommodate [a] policy concern").

Finally, J.S. argues that "under Defendant's interpretation . . . students would have no ability to avail themselves of legal assistance to challenge any decision of the CSE [Committee on Special Education], yet the parent would. This is an absurd result, and clearly contrary to the legislative intent of the IDEA." J.S.'s Memorandum of Law [12], p. 13. Given J.S.'s acknowledgment that the IDEA was "intended to ease the financial burden *on parents* making claims" (id., p. 9, emphasis added), that argument strikes me as somewhat curious.

In any event, "a statute is not 'absurd' merely because it produces results that a court or litigant finds anomalous or perhaps unwise. To the contrary, courts should look beyond

a statute's text under the canon against absurdity only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone". Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 705-06 (2d Cir. 2019); J.S.'s Memorandum of Law [12], p. 13.

"[T]he absurd results doctrine must be used sparingly because judicial speculation that a legislature could not have meant what it unmistakably said risks corrupting the separation of powers doctrine." 2A Sutherland Statutory Construction §46:7 (7th ed.). "Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from deference to the supremacy of the Legislature . . . . If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent . . . . This allows both of our branches to adhere to our respected, and respective, constitutional roles." Lamie, 540 U.S. at 538, 542.

## CONCLUSION

Congress may one day expand the scope of individuals entitled to recover attorneys' fees and costs under the IDEA. However, unless and until it does, this court's hands are tied. *See* Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 736 (2014) ("[t]he wisdom of Congress's judgment on this matter is not our concern. Our responsibility is to enforce [the statute] as written"). Since the IDEA clearly does not entitle J.S. to obtain the relief which he seeks, I recommend that DOCCS' motion to dismiss [7] be granted.

Unless otherwise ordered by Judge Sinatra, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by October 19, 2020. Any

requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 5, 2020

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge